UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | CASE NO. 2:18 cr. 152 |
| HYUNDAI OILBANK CO., LTD.; | : | |
| S-OIL CORPORATION; | : | |
| HEE-SOO KIM, | : | |
|   a/k/a 金熙洙, a/k/a 김희수; | : | |
| TAE HO CHO, | : | Violations:  15 U.S.C. § 1 |
|   a/k/a 조태호; | : |            18 U.S.C. § 371 |
| JIWON KANG, | : |            18 U.S.C. § 1512 |
|   a/k/a 강지원; | : | |
| YOUNG-HO YOON, | : | |
|   a/k/a 윤영호; | : | |
| BYUNG KUK KIM, | : | |
|   a/k/a 김병국; | : | |
| BYUNGIK MOON, | : | |
|   a/k/a 문병익; and | : | |
| EUL-JIN HYUNG, | : | |
|   a/k/a 형을진; | : | |
| | : | |
| Defendants. | : | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

1.    The United States currently maintains numerous U.S. Army, Navy, Marine, and Air Force installations in the Republic of Korea ("Korea"), housing American soldiers, marines, airmen, and sailors in the region (collectively "United States Forces Korea," or "USFK"). These military installations need fuel for various purposes, and two United States Department of Defense agencies, the Defense Logistics Agency ("DLA"), and the Army and Air Force

Exchange Service ("AAFES"), purchase fuel through competitive bidding processes, including through Posts, Camps & Stations ("PC&S") contracts, to supply the USFK installations.

THE DEFENDANTS AND THEIR CO-CONSPIRATORS

During the period covered by this Indictment:

2.     Defendant HYUNDAI OILBANK CO., LTD. ("HYUNDAI") was a petroleum and refinery company organized and existing under the laws of Korea, with its principal place of business in Seosan, Korea.  Defendant HYUNDAI manufactures gasoline and diesel products and imports them into the United States.  Defendant HYUNDAI, by and through its agent Company E, submitted bids for and was awarded numerous USFK fuel supply contracts, including PC&S contracts.  Company E was a logistics company headquartered in Seoul, Korea.

3.     Defendant S-OIL CORPORATION ("S-OIL") was a petroleum and refinery company organized and existing under the laws of Korea, with its principal place of business in Seoul, Korea.  Defendant S-OIL, by and through its agent Company F, submitted bids for and was awarded numerous USFK fuel supply contracts, including PC&S contracts.  Company F was a logistics company headquartered in Seoul, Korea.

4.     Defendant HEE-SOO KIM was a resident and citizen of Korea.  From at least as early as 2005, the exact dates being unknown to the Grand Jury, HEE-SOO KIM was employed by Company A, a petroleum and refinery company headquartered in Seoul, Korea, and was responsible for or involved with preparing and submitting Company A's bids for USFK fuel supply contracts, including PC&S contracts.

5.     Defendant TAE-HO CHO was a resident and citizen of Korea.  From at least as early as 2006, the exact dates being unknown to the Grand Jury, CHO was employed by

2

Defendant HYUNDAI and was responsible for or involved with preparing and submitting Defendant HYUNDAI's bids for USFK fuel supply contracts, including PC&S contracts.

6. Defendant EUL-JIN HYUNG was a resident and citizen of Korea. From at least as early as 2008, the exact dates being unknown to the Grand Jury, HYUNG was employed by Defendant S-OIL and was responsible for or involved with preparing and submitting Defendant S-OIL's bids for USFK fuel supply contracts, including PC&S contracts.

7. Defendant JIWON KANG was a resident and citizen of Korea. From at least as early as 2006, the exact dates being unknown to the Grand Jury, JIWON KANG was employed by Company D, a petroleum and refinery company headquartered in Seoul, Korea, and was responsible for or involved with preparing and submitting Company D's bids for USFK fuel supply contracts, including PC&S contracts.

8. Defendant BYUNG KUK KIM was a resident and citizen of Korea. From at least as early as 2006, the exact dates being unknown to the Grand Jury, BYUNG KUK KIM was employed by Company A and was responsible for or involved with preparing and submitting Company A's bids for USFK fuel supply contracts, including PC&S contracts.

9. Defendant BYUNGIK MOON was a resident and citizen of Korea. From at least as early as 2012, the exact dates being unknown to the Grand Jury, MOON was employed by Company D and was responsible for or involved with preparing and submitting Company D's bids for USFK fuel supply contracts, including PC&S contracts.

10. Defendant YOUNG-HO YOON was a resident and citizen of Korea. From at least as early as 2006, the exact dates being unknown to the Grand Jury, YOON was employed by Company D and was responsible for or involved with preparing and submitting Company D's bids for USFK fuel supply contracts, including PC&S contracts.

11.     Whenever this Indictment refers to any act, deed or transaction of any company, it means that the company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business affairs.

12.     Other corporations and individuals not made defendants in this Indictment participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance of the conspiracy.

## BACKGROUND

13.     DLA, formerly known as the Defense Energy Support Center, was an agency within the United States Department of Defense headquartered in Fort Belvoir, Virginia.  One of its missions was to ensure that U.S. military installations around the world had their daily necessities.  To achieve this mission, DLA contracted with various contractors and subcontractors to supply those necessities, including fuel, food, and other goods.

14.     AAFES was an agency within the United States Department of Defense headquartered in Dallas, Texas.  It sought to improve the lives of soldiers and airmen by providing quality goods and services to soldiers and airmen at military and air bases throughout the world, including by providing reasonably priced gasoline at on-base service stations.  One hundred percent of AAFES earnings supported the military community, including by funding Army Child Development Centers, Youth Services and fitness centers, delivery of Warfighters' uniforms and serving affordable school lunches for service members' children overseas.

15.     The Defense Finance and Accounting Service ("DFAS") was the financial and accounting organization for the United States Department of Defense located in Columbus, Ohio.

4

One service DFAS provided was making payment to contractors on certain Department of Defense contracts.

16.     DLA awarded PC&S fuel supply contracts in Korea via a full and open competitive procurement process in which competing bidders submitted "initial" bids by a given date, which were reviewed by officials at DLA.  After receipt of the initial bids, competing bidders were permitted to submit revised final bids.  Bidders were not, however, permitted to view competing bidders' initial bids in preparing their final bids.  DLA reviewed each final bid and awarded the line items based on the lowest bid price and the contractors' past performance. AAFES administered a similar procurement process and solicited competitive bids for contracts to supply fuel to on-base service stations in Korea.

17.     PC&S contracts required the contractor to deliver a particular type and quantity of fuel to specified USFK installations during the multi-year contract period.  Generally, a single PC&S solicitation would list numerous USFK installations and their estimated supply needs for gasoline, diesel, and kerosene.  Each installation was then assigned a separate line item number. Bidders were not required to submit a bid on all line items.  If a contractor was awarded multiple line items, those line items were awarded under a single contract.  Upon shipment or delivery of fuel under the PC&S contracts, the contractor would submit an invoice which represented to the United States Department of Defense that the fuel met the requirements of the contract.  Upon receipt of the invoice, DFAS would wire payment to the contractor from its location in Columbus, Ohio via Electronic Funds Transfer.

18.     In or around March 2005, DLA issued Solicitation SP0600-05-R-0063 to purchase a variety of fuel types from Korean petroleum and refinery companies to be delivered to USFK installations throughout Korea.  Bids for this Solicitation were submitted to DLA in the

United States in or around May 2005 and contracts were awarded in or around February 2006. This Solicitation required contractors to provide service until in or around July 31, 2009.

19. In or around August 2006, DLA issued supplemental Solicitation SP0600-05-R-0063-0001 to purchase a variety of fuel types from Korean petroleum and refinery companies to be delivered to USFK installations throughout Korea. Bids for this Solicitation were submitted to DLA in the United States in or around August 2006 and contracts were awarded in or around September 2006. This supplemental Solicitation required contractors to provide services until in or around July 31, 2009.

20. During the period from February 2006 until at least July 31, 2009, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for payments under PC&S contracts awarded pursuant to SP0600-05-R-0063 and SP0600-05-R-0063-0001, and received payments totaling approximately $253,974,072 sent from DFAS in Columbus, Ohio, to bank accounts located in Korea and elsewhere via Electronic Funds Transfer.

21. In or around November 2008, DLA issued Solicitation SP0600-08-R-0233 to purchase a variety of fuel types from Korean petroleum and refinery companies to be delivered to USFK installations throughout Korea. Final bids for this Solicitation were submitted to DLA in the United States in or around April 2009 and contracts were awarded in or around September 2009. This Solicitation required contractors to provide service from in or around October 1, 2009 until at least in or around July 31, 2013.

22. During the period from in or around March or April 2010 until in or around September or October 2013, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for services rendered under PC&S

contracts awarded pursuant to Solicitation SP0600-08-R-0233, and received payments totaling approximately $280,869,685 sent from DFAS in Columbus, Ohio, to bank accounts located in Korea and elsewhere via Electronic Funds Transfer.

23.     In or around July 2012, DLA issued Solicitation SP0600-12-R-0232 to purchase a variety of fuel types from Korean petroleum and refinery companies to be delivered to USFK installations throughout Korea.  Final bids for this Solicitation were submitted on or around December 13, 2012 and contracts were awarded in or around March 2013.  This Solicitation required contractors to provide service from in or around August 1, 2013 until in or around July 31, 2016.

24.     During the period from in or around September or October 2013 until in or around September or October 2016, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for services rendered under PC&S contracts awarded pursuant to Solicitation SP0600-12-R-0232, and received payments totaling approximately $122,098,601 sent from DFAS in Columbus, Ohio, to bank accounts located in Korea and elsewhere via Electronic Funds Transfer.

25.     From at least in or around 2006 through in or around September or October of 2016, payments on the PC&S contracts awarded through Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232, were made from DFAS in Columbus, Ohio, via Electronic Funds Transfer, to bank accounts located in Korea or Singapore held or controlled by Company A, D, E, F or Defendants HYUNDAI and S-OIL.

COUNT 1
PRICE FIXING, BID RIGGING AND MARKET ALLOCATION
(15 U.S.C. § 1)

26.      Each and every allegation contained in Paragraphs 1-20 of this Indictment are
hereby re-alleged as if fully set forth in this Count.

27.      During the Conspiracy Period, beginning at least in or around March 2005 and
continuing until at least in or around September or October 2016, the exact dates being unknown
to the Grand Jury, in the Southern District of Ohio and elsewhere, the Defendants and others
known and unknown to the Grand Jury, entered into and engaged in a combination and
conspiracy to suppress and eliminate competition for USFK fuel supply contracts, including
PC&S contracts.  The combination and conspiracy engaged in by the Defendants and their co-
conspirators was in unreasonable restraint of interstate and foreign trade and commerce in
violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

28.      The charged combination and conspiracy consisted of a continuing agreement,
understanding, and concert of action among the Defendants and their co-conspirators, the
substantial terms of which were to suppress and eliminate competition by agreeing to allocate the
supply volume of, fix prices of, and submit artificially-determined, non-competitive, inflated
bids and to refrain from bidding for certain USFK fuel supply contracts, including PC&S
contracts.  The objective of the conspiracy was to be awarded certain USFK fuel supply contracts
and receive payments from agencies of the United States Department of Defense at non-
competitive, inflated prices for the duration of the contracts.

MEANS AND METHODS OF THE CONSPIRACY

29.　　For the purpose of forming and carrying out the charged combination and conspiracy, the Defendants, together with their co-conspirators, did those things that they combined and conspired to do, including, among other things:

a.　　discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States;

b.　　discussing, exchanging, and agreeing on the price or price levels that co-conspirators would bid for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States;

c.　　submitting, or causing to be submitted to DLA in the United States "bogus," intentionally losing bids for certain PC&S line items, or refraining to bid, with the understanding that co-conspirators submitting the losing bids or refraining from bidding would be allocated other line items pursuant to the bid rigging agreement (the artificially high and bogus bids made it appear to DLA that the co-conspirators competed for certain line items when, in fact, they had not);

d.　　submitting invoices to agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially-determined, non-competitive, inflated prices;

e. receiving payments from agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially-determined, non-competitive, inflated prices;

f. discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain AAFES contracts; and

g. causing agencies of the United States Department of Defense located in the United States to pay artificially-determined, non-competitive, inflated rates to the Defendants' and their co-conspirators' companies for the duration of the fuel contracts, thereby increasing the profitability of those contracts for the winning co-conspirator.

TRADE AND COMMERCE

30. During the Conspiracy Period, Defendants HYUNDAI, S-OIL, and the individual Defendants' companies sold to DLA and AAFES in the United States fuel and fuel supply services for use at U.S. military bases. The charged combination and conspiracy involved U.S. import trade or commerce in fuel and fuel supply services. Pursuant to fuel service contracts, including PC&S contracts, Defendants HYUNDAI, S-OIL, and the individual Defendants' companies, directly or by and through their agents, delivered fuel to USFK installations. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. interstate and import trade and commerce in fuel and fuel supply services and on U.S. interstate commerce and that effect, in part, gives rise to this charge.

31. During the Conspiracy Period, the charged combination and conspiracy had a substantial and intended effect in the United States. For example, the charged combination and conspiracy caused a United States Department of Defense agency located within the Southern

10

District of Ohio to transfer U.S. dollars to the Korean bank accounts of Company A, Company D, Company E, Company F or Defendants HYUNDAI and S-OIL. The charged combination and conspiracy also caused United States Department of Defense agencies to pay non-competitive prices for fuel and fuel supply services for use at U.S. military bases.

32.     During the Conspiracy Period, the business activities of the Defendants and their co-conspirators in connection with USFK fuel supply contracts were within the flow of, and substantially affected, commerce among the states and with foreign nations.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1

## COUNT 2
## CONSPIRACY TO DEFRAUD THE UNITED STATES
### (18 U.S.C. § 371)

33.     The United States re-alleges Paragraphs 1-20 of this Indictment and incorporates by reference these paragraphs as if they were fully set forth herein.

34.     During the Conspiracy Period, beginning at least in or around March 2005 and continuing until at least in or around September or October 2016, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, the Defendants and their co-conspirators did knowingly and willfully combine, conspire, confederate and agree to defraud, the United States and an agency thereof, to wit, DLA, by impairing, obstructing and defeating by dishonest means the lawful function of DLA's competitive procurement process for USFK fuel supply contracts, including PC&S contracts, in violation of Title 18, United States Code, Section 371.

11

## OBJECT OF THE CONSPIRACY

35.     The object of the conspiracy was for the Defendants and their co-conspirators to obtain payments under USFK fuel supply contracts, including PC&S contracts, from the United States Department of Defense and its agencies, including DLA, at artificially inflated prices caused by the conspiracy.

## MEANS AND METHODS OF THE CONSPIRACY

36.     The manner and means by which the Defendants and their co-conspirators sought to accomplish the conspiracy, included, but were not limited to the following:

a.     discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States, thereby foreclosing competition among the conspirators for these PC&S contracts, so as to impair, obstruct, and defeat DLA's lawful function of its competitive bidding process;

b.     discussing, exchanging, and agreeing on the price or price levels that each co-conspirator would bid for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States, thereby foreclosing price competition among the conspirators on these PC&S contracts, so as to impair, obstruct, and defeat DLA's lawful function of its competitive bidding process;

c.     submitting, or causing to be submitted to DLA in the United States "bogus," intentionally losing bids for certain line items in PC&S Solicitations SP0600-05-R-

0063, SP0600-05-R-0063-0001, SP0600-08-R-0233 and SP0600-12-R-0232, with the understanding that the co-conspirators submitting the losing bids would be allocated other line items. The bogus bids deceived the United States Department of Defense and its agencies, including DLA, into believing that the prices bid for certain line items were arrived at competitively when, in fact, the prices bid were non-competitive and collusive and resulted from communications and agreements between and among the Defendants and co-conspirators;

d.  submitting invoices to agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially-determined, non-competitive, inflated prices;

e.  receiving payments from agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially-determined, non-competitive, inflated prices;

f.  discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain AAFES contracts; and

g.  causing agencies of the United States Department of Defense to pay artificially-determined, non-competitive inflated rates to the Defendants' and their co-conspirators' companies for the duration of the fuel contracts, thereby increasing the profitability of those contracts for the winning co-conspirator.

## OVERT ACTS

37.  In furtherance of the conspiracy and to achieve its objects, the Defendants, together with others known and unknown, committed and caused to be committed the following overt acts, among others, in the Southern District of Ohio and elsewhere:

a.   In or around March or April 2005, Defendant HEE-SOO KIM and other co-conspirators from Defendant HYUNDAI, Company A, and Company D gathered together and communicated and reached an agreement to share confidential bid information, allocate the supply volume, and coordinate and fix the minimum bid price for PC&S contracts, including line items on PC&S Solicitation SP0600-05-R-0063.

b.   On or around April 29, 2005, before bids were due on Solicitation SP0600-05-R-0063, an agent of Defendant HYUNDAI sent an email to Defendant HEE-SOO KIM and other co-conspirators reflecting confidential price information and memorializing the agreement to allocate the supply volume of, rig bids for, and fix prices for PC&S contracts, including line items on PC&S Solicitation SP0600-05-R-0063.

c.   In or around May 2005, Defendant HYUNDAI, Company A, and Company D submitted bids to DLA in the United States for PC&S Solicitation SP0600-05-R-0063 at inflated prices that had been coordinated and fixed among the co-conspirators in furtherance of the conspiracy.

d.   In or around 2006, Defendants JIWON KANG, TAE-HO CHO, HEE-SOO KIM, BYUNG KUK KIM, and other co-conspirators gathered together and communicated and continued to share confidential bid information, allocate the supply volume, and coordinate and fix the minimum bid price for certain line items on PC&S Solicitation SP0600-05-R-0063-0001 in furtherance of the continuing bid rigging conspiracy.

e. In or around August 2006, Defendant HYUNDAI, Company A, and Company D submitted bids to DLA in the United States for PC&S Solicitation SP0600-05-R-0063-0001 at inflated prices that had been coordinated and fixed among the co-conspirators in furtherance of the conspiracy.

f. During the period from February 2006 until at least July 31, 2009, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for payments under PC&S contracts awarded pursuant to SP0600-05-R-0063 and SP0600-05-R-0063-0001, and received payments totaling approximately $253,974,072 sent from DFAS in Columbus, Ohio, to bank accounts located in Korea via Electronic Funds Transfer.

g. In or around November or December 2008, Defendants TAE-HO CHO, JIWON KANG, BYUNG KUK KIM, HEE-SOO KIM, YOUNG-HO YOON, EUL-JIN HYUNG and other co-conspirators gathered together or communicated and continued to share confidential bid information, allocate the supply volume, and coordinate and fix the minimum bid price for certain line items on PC&S Solicitation SP0600-08-R-0233 in furtherance of the continuing bid rigging conspiracy.

h. On or around December 13, 2008, before bids were due on PC&S Solicitation SP0600-08-R-0233, an agent of Defendant HYUNDAI sent an email to YOUNG-HO YOON, TAE-HO CHO, BYUNG KUK KIM and other co-conspirators reflecting confidential price information and memorializing the continuing agreement to allocate the supply volume, rig bids and fix prices for the PC&S

contracts. The email instructed the recipients to "immediately delete" the email after reading.

i. In or around April 2009, Defendants HYUNDAI, S-OIL, Company A, and Company D submitted bids for line items on PC&S contracts at inflated prices that had been coordinated and fixed among the co-conspirators in furtherance of the conspiracy.

j. During the period from in or around March or April 2010 until in or around September or October 2013, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for services rendered under PC&S contracts awarded pursuant to Solicitation SP0600-08-R-0233, and received payments from DFAS in Columbus, Ohio totaling approximately $280,869,685.

k. In or around late 2012, Defendants HYUNDAI, S-OIL, BYUNGIK MOON, HEE-SOO KIM and other co-conspirators communicated or directed co-conspirators to communicate and continued to share confidential bid information, allocate the supply volume, and coordinate and fix the minimum bid price for certain line items on PC&S Solicitation SP0600-12-R-0232 in furtherance of the continuing bid rigging conspiracy.

l. On or around December 13, 2012, Defendants HYUNDAI, S-OIL, Company A, and Company D submitted bids to DLA in the United States for Solicitation SP0600-12-R-0232 at inflated prices that had been coordinated and fixed among certain co-conspirators in furtherance of the conspiracy.

16

m.    During the period from in or around September or October 2013 until in or around September or October 2016, Defendants or their co-conspirators submitted or caused to be submitted to DLA in the United States numerous invoices for services rendered under PC&S contracts awarded pursuant to Solicitation SP0600-12-R-0232, and received payments from DFAS in Columbus, Ohio totaling approximately $122,098,601.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 371

<u>COUNT 3</u>
OBSTRUCTION OF JUSTICE
TAMPERING WITH A WITNESS OR INFORMANT
(18 U.S.C. § 1512(b)(2)(a) & (b)(3))

38.    In or around 2014, the exact dates being unknown to the Grand Jury, Defendant HEE-SOO KIM and Company A learned that CW-1, who was previously employed by Company E and continued to work in the industry, had reported information regarding the commission of the federal offenses charged in this Indictment to a law enforcement officer of the United States.

39.    In or around 2014, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, Defendant HEE-SOO KIM knowingly used intimidation, threatened, and corruptly persuaded CW-1, and attempted to do so, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, and to cause and induce CW-1 to withhold testimony from an official proceeding.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION
1512(b)(2)(a) & (b)(3)

17

SENTENCING ALLEGATION

40.     With respect to the charges in Counts 1 and 2 in this Indictment, for purposes of determining the alternative maximum fine pursuant to Title 18, United States Code, Section 3571(d), Defendants HYUNDAI, S-OIL and their coconspirators derived gross gains of at least more than $100,000,000, and persons other than the Defendants and their coconspirators suffered gross losses of at least more than $100,000,000.

Dated: Sept. 27 2018                          A TRUE BILL


S/ Foreperson
_____
FOREPERSON

18

Dated: September 27, 2018

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
RYAN DANKS
Acting Chief, Washington Criminal I

_____
ANDREW C. FINCH
Principal Deputy Assistant Attorney General

_____
KEVIN B. HART
Assistant Chief, Washington Criminal I

_____
RICHARD A. POWERS
Acting Deputy Assistant Attorney General

_____
RYAN D. TANSEY
KATHERINE H. STELLA
Trial Attorneys, Antitrust Division
U.S. Department of Justice

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

450 5th Street, NW
Washington, DC 20350
(202) 532-4156
ryan.tansey@usdoj.gov

Antitrust Division
United States Department of Justice

Dated: September 27, 2018


BENJAMIN C. GLASSMAN
United States Attorney
Southern District of Ohio


BRENDA SHOEMAKER
Deputy Criminal Chief
United States Attorney's Office
Southern District of Ohio

20